LUKINS & ANNIS, P.S.
REID G. JOHNSON, WSBA #44338
JARED DE GUZMAN, WSBA #61316
1600 Washington Trust Financial Center
717 W Sprague Ave
Spokane, WA  99201-0466
Telephone: (509) 455-9555
Facsimile: (509) 747-2323

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VICTOR OCHOA,<br><br>Plaintiff,<br><br>v.<br><br>PASCO SCHOOL DISTRICT NO. 1<br><br>Defendant. | NO. 4:24-CV-5097-TOR<br><br>PLAINTIFF'S SECOND AMENDED COMPLAINT<br><br>Jury Trial Demanded |

Plaintiff Victor Ochoa ("Mr. Ochoa"), by and through his counsel of record, Reid G. Johnson and Jared de Guzman of Lukins & Annis, P.S., hereby complains and alleges as follows.  Mr. Ochoa demands a trial by jury for all claims in this matter.

//

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 1

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA  99201
Telephone: (509) 455-9555
Fax:  (509) 747-2323

11/7/25

## I.    THE PARTIES

1.1    Plaintiff Victor Ochoa is an individual who resides in Benton County, Washington.  At all times relevant hereto, Mr. Ochoa was employed by Defendant as a mechanic for Defendant Pasco School District No. 1.

1.2    On information and belief, Defendant Pasco School District No. 1 (the "District") is a public school district located in Pasco, Washington.

## II.    JURISDICTION AND VENUE

2.1    Mr. Ochoa re-alleges the preceding paragraphs as though fully set forth herein.

2.2    This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367.

2.3    This Court has personal jurisdiction over the District because the District is located in Franklin County, and the events which gave rise to this suit occurred in Franklin County, Washington, within the Eastern District of Washington.

2.4    Venue is proper in this judicial district pursuant to, *inter alia*, 28 U.S.C. § 1391.

//

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 2

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA  99201
Telephone: (509) 455-9555
Fax:  (509) 747-2323

11/7/25

### III.   FACTS

3.1   Mr. Ochoa re-alleges the preceding paragraphs as though fully set forth herein.

3.2   Mr. Ochoa began his job as a mechanic for the District on or about January 9, 2023.

3.3   Prior to working for the District, Mr. Ochoa worked as a mechanic for the Sunnyside School District for eighteen years.

3.4.   On or about April 20, 2023, a meeting of District union mechanics and union representatives took place (the "Union Meeting").

3.5   A topic discussed during the Union Meeting was a pending job analysis for mechanics that the District was supposed to perform by March 31, 2023.  The District had not performed the job analysis by March 31, 2023.

3.6   During the Union Meeting, union members asked union representatives what actions could be taken to address the District's failure to perform the job analysis.

3.7   Mr. Ochoa, a union member at the time, stated to other members that they could move to have the union representatives file a grievance.

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 3

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA  99201
Telephone: (509) 455-9555
Fax:  (509) 747-2323

11/7/25

3.8    During the Union Meeting, Steven Davidson, the union business manager, dissuaded union members from moving to file a grievance. Mr. Davidson stated the District could "do whatever it wanted."

3.9    Mr. Ochoa objected to Mr. Davidson's comment and told the other union members that their CBA permitted union members to move to file a grievance.

3.10    Ultimately, during the Union Meeting, union members moved to file a grievance with the District by majority vote.

3.11    A grievance was filed by union representative Berta Chavez the following week.

3.12    On April 26, 2023, six days after the Union Meeting, Mr. Ochoa was summoned to a meeting with interim Director Jessica De La More and shop supervisor Ronald Sanchez.

3.13    Mr. Ochoa was told to go home because he was relieved of his duties until further notice. Mr. Ochoa was handed a letter informing him he was immediately placed on administrative leave.

3.14    Mr. Ochoa was also told he was under investigation for serious misconduct and that the District was considering terminating his employment.

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 4

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

11/7/25

3.15   The following day, on April 27, 2023, Mr. Ochoa was instructed to meet the District's Superintendent of Legal Services, Sarah Thornton, for an investigation meeting.  During this meeting, Mr. Ochoa was informed that the District had decided to terminate his employment.

3.16   The next day, on April 28, 2023, Mr. Ochoa met with Sarah Thornton and Jay Simmon, the Director of Operations.  At the meeting, Mr. Ochoa was given a written proposal informing him he would receive a severance package if he agreed to resign voluntarily.

3.17   Mr. Ochoa was told he would be terminated either way and that he had to respond by May 1, 2023.

3.18   Mr. Ochoa sent an email to the director of operations and superintendent declining to resign on May 1, 2023.

3.19   On May 5, 2023, Mr. Ochoa appealed the decision to terminate him and sent notice to the District Superintendent, Michelle Witney.

3.20   One week later, on May 8, 2023, Mr. Ochoa received a termination letter and an unsatisfactory evaluation. Ronald Sanchez, Mr. Ochoa's immediate supervisor, said this was not the evaluation he performed for that month.

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 5

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA  99201
Telephone: (509) 455-9555
Fax:  (509) 747-2323

11/7/25

3.21    That same day, Mr. Ochoa filed a discrimination complaint with the District.  Mr. Ochoa reasonably believed he was being discriminated against on the basis of race, national origin, and age.

3.22    On May 30, 2023, the superintendent reinstated Mr. Ochoa's job with the condition that he would be on a "last chance" performance improvement plan and have to meet with a supervisor once a month regarding his performance.

3.23    Mr. Ochoa returned to work in June 2023.  During his period of reinstated employment, Mr. Ochoa was assigned vastly different duties than prior to being subject to disciplinary measures. He was assigned to work on different equipment and was tasked with performing work that was left incomplete by his coworkers, among other changes. These changes largely made Mr. Ochoa's job impossible to perform.

3.24    Mr. Ochoa did his monthly performance evaluations.  Mr. Ochoa attended evaluation meetings in August, September, October, and November of 2023, and did not earn any unsatisfactory marks.  Kelly Conklin assured Mr. Ochoa that he was going to make it through his probationary period and had "nothing to worry about."

3.25    On December 20, 2023, Mr. Ochoa once again was informed he was under investigation, this time for a staff complaint against him. Mr. Ochoa knew

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 6

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

11/7/25

nothing about the allegations against him and the new investigation caused him severe distress, making him lose sleep over the holidays.

3.26   Mr. Ochoa was never interviewed regarding such allegations or permitted to discuss them in any manner.

3.27   On December 27, 2023, Mr. Ochoa was informed that the District was considering disciplinary actions against him again.

3.28   On January 5, 2024, Mr. Ochoa received a Letter of Direction, informing him that the staff complaints against him were found credible.

3.29   Two days later, on January 8, 2024, Mr. Ochoa was given a letter informing him that he was terminated immediately due to unsatisfactory performance and for being "untrainable."

3.30   That same day, on January 8, 2024, Mr. Ochoa filed a step one grievance alleging a violation of his collective bargaining agreement.  Mr. Ochoa's grievance stated: "[T]he Pasco School District did not have just cause to terminate my employment. The Superintendent put me on a plan of improvement and did not give me a last chance how it states on the final evaluation document dated 1/8/24. Note my official orientation start date was 01/06/2023 and this shows that my twelve months were already up.  I dispute my evaluation given to me on this date. Remedies sought reinstate job with all benefits. Made whole in all ways."

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 7

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

11/7/25

Attached hereto as **Exhibit A**, is a true and Correct Copy of the Arbitrator's Opinion and Award in Case No. 138994-P-24.

3.31 Mr. Ochoa Filed an EEOC complaint on or about April 30, 2024, against the District alleging discrimination on the basis of race, color, national origin, age, and retaliation.

3.32 The EEOC issued a right to sue letter to Mr. Ochoa on or about May 10, 2024.

3.33 Meanwhile, Mr. Ochoa's union grievance was denied and progressed along the steps of grievance procedure. Mr. Ochoa's union appealed to arbitration.

3.34 Binding arbitration hearings on Mr. Ochoa's grievance were held on December 13, 2024, and January 8, 2025.

3.35 The Arbitrator's Opinion and Award was published on March 18, 2025. The Arbitrator ruled in Mr. Ochoa's favor. Among other things, the Arbitrator did not find that Mr. Ochoa was terminated for unsatisfactory performance.

3.36 The Arbitrator ordered the following remedy: [Mr. Ochoa] is to be reinstated to the position of Mechanic at Pasco School District. He will be considered to have passed his probationary period. His reinstatement will be effective immediately. He is to be reinstated and made whole including back pay

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 8

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

11/7/25

and benefits he would have accrued as though he had not been terminated."

Exhibit A, at p. 16.

3.37    On information and belief, the District calculated back pay owed to Mr. Ochoa amounted to approximately $90,454.94.  On information and belief, the District calculated Mr. Ochoa's backpay at the Mechanic 1 level, even though he should have been paid at a Mechanic 2 level.  On information and belief, the District's calculated back pay did not include certain benefits, including, but not limited to, equipment allowances.

3.38    Mr. Ochoa calculates his actual back pay due, from January 2024 to June 2025, to be at least $111,874.00.

3.39    In July 2025, Mr. Ochoa received a payment from the District in the amount of approximately $48,000.00 for back pay.

3.40    Around that time, the District reinstated some of Mr. Ochoa's benefits and began to issue Mr. Ochoa regular monthly paychecks at the Mechanic 1 pay level, which is not the correct rate of pay as if he had not been terminated.

3.41    To date, the District has not paid Mr. Ochoa the remainder of his back pay and benefits owed as though he had not been terminated.

3.42    The District issued Mr. Ochoa a letter to return to work, effective November 1, 2025.

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 9

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

11/7/25

## IV.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### RETALIATION IN VIOLATION OF 42 U.S.C. § 2000(e), *et seq.*

4.1   Mr. Ochoa re-alleges the preceding paragraphs as though fully set forth herein.

4.2   Mr. Ochoa engaged in several protected activities, including encouraging his fellow union members to move to file a grievance against the District, appealing the District's decision to terminate his employment on May 5, 2023, and filing a discrimination complaint with human resources on May 8, 2023.

4.3   Mr. Ochoa suffered several adverse employment decisions, including but not limited to his initial placement on administrative leave, his changed work duties when being reinstated, his placement on a "last chance" performance improvement plan, and his ultimate termination.

4.4   These adverse employment decisions were the direct and proximate result of Mr. Ochoa engaging in protected activities.  As a direct and proximate result of the District's termination of Mr. Ochoa, Mr. Ochoa suffered damages including past, present, and future loss of earnings and income; emotional and mental distress; and other such damages as will be proven at trial.

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 10

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA  99201
Telephone: (509) 455-9555
Fax:  (509) 747-2323

11/7/25

## SECOND CAUSE OF ACTION:
### RETALIATION IN VIOLATION OF RCW 49.60, *et seq.*

4.5    Mr. Ochoa re-alleges the preceding paragraphs as though fully set forth herein.

4.6    Mr. Ochoa engaged in several statutorily protected activities, including but not limited to encouraging his fellow union members to move to file a grievance against the District, appealing the District's decision to terminate his employment on May 5, 2023, and filing a discrimination complaint with human resources on May 8, 2023.

4.7    Thereafter, the District took several adverse employment actions against Mr. Ochoa, including but not limited to placing him on administrative leave, changing work duties when being reinstated, placing him on a "last chance" performance improvement plan, and ultimately terminating Mr. Ochoa.

4.8    These adverse employment actions were the direct and proximate result of Mr. Ochoa engaging in statutorily protected activities.

4.9    As a direct and proximate result of the District's termination of Mr. Ochoa, Mr. Ochoa suffered damages including past, present, and future loss of earnings and income; emotional and mental distress; and other such damages as will be proven at trial.

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 11

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

11/7/25

## THIRD CAUSE OF ACTION:
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

4.10    Mr. Ochoa re-alleges the preceding paragraphs as though fully set forth herein.

4.11    RCW 44.60 declares that practices of discrimination against inhabitants because of race or color are a matter of state concern, and taking an adverse employment action against an employee because of their race or color, or because the employee has opposed an unfair employment practice are unfair employment practices of an employer.

4.12    Mr. Ochoa's reporting of unfair employment practices is protected under RCW 44.60.210.

4.13    The District's discharge of Mr. Ochoa violated Washington's public policy because it will discourage other employees from reporting unfair employment practices.

4.14    The District discharged Mr. Ochoa because he engaged in conduct desirable under public policy.

4.15    As a direct and proximate result of the District's wrongful termination of Mr. Ochoa, Mr. Ochoa suffered damages including past, present, and future loss of earnings and income; emotional and mental distress; and other such damages as will be proven at trial.

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 12

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

11/7/25

## FOURTH CAUSE OF ACTION:
## ENFORCEMENT OF ARBITRATION AWARD

4.16   Mr. Ochoa re-alleges the preceding paragraphs as though fully set forth herein.

4.17   Binding arbitration was held on Mr. Ochoa's grievance on December 13, 2024, and January 8, 2025.

4.18   Pursuant the Arbitrator's Opinion and Award, dated March 18, 2025, among other things, the District was to immediately reinstate Mr. Ochoa to his position and be made whole, including back pay and payments of benefits as though he had not been terminated.

4.19.   To date, Mr. Ochoa has not been paid back pay and payment of benefits as though he had not been terminated.

4.20   The District refused to comply with the arbitration award by, among other things, refusing to pay Mr. Ochoa's back pay and payment of benefits as though he had not been terminated.

4.21   The District's refusal to comply with the Arbitration award was willful and intentional.

4.22   Mr. Ochoa has been damaged by the District's refusal to comply with the arbitration award in an amount to proven at trial.

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 13

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

11/7/25

## DEMAND FOR JURY

Mr. Ochoa hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Ochoa demands judgment as follows:

1. For an order directing the District to, pursuant to the terms of the Arbitration award, immediately pay Mr. Ochoa his full back pay in the amount of at least $63,874.00.

2. For an order directing the District to reinstate Mr. Ochoa's current pay as if he had not been terminated.

3. For an award of damages in an amount to be proven at trial;

4. For an award of reasonable attorneys' fees and costs to Mr. Ochoa pursuant to all statutes, common law, contract, and pursuant to the Court's equitable powers;

5. For the right to amend this Second Amended Complaint to supplement facts and/or causes of action upon discovery of additional information;

6. For such other and further relief in law and/or equity as the Court deems just and equitable.

//

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 14

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

11/7/25

DATED this 7th day of November, 2025.

LUKINS & ANNIS, P.S.

LUKINS & ANNIS, P.S.
By: /s/ REID G. JOHNSON
REID G. JOHNSON, WSBA #44338
JARED DE GUZMAN, WSBA #61316

Attorneys for Plaintiff

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 15

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

11/7/25

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 7th day of November, 2025, I served the foregoing document on counsel of record at the address and in the manner described below:

Duncan K. Fobes                                  ☒    U.S. Mail
Patterson Buchanan Fobes & Leitch, Inc.,         ☐    Hand Delivered
P.S.                                             ☐    Overnight Mail
1000 Second Ave., 30th Floor          ☐    Telecopy (FAX)
Seattle, WA 98104                                ☒    Via email / ECF
dkf@pattersonbuchanan.com

Attorney for Defendant

/s/ _____
Kirsten Price, Legal Assistant

PLAINTIFF'S SECOND AMENDED
COMPLAINT: 16

LAW OFFICES OF
**LUKINS & ANNIS, PS**
A PROFESSIONAL SERVICE CORPORATION
717 W Sprague Ave., Suite 1600
Spokane, WA 99201
Telephone: (509) 455-9555
Fax: (509) 747-2323

11/7/25

# EXHIBIT A

IN THE MATTER OF THE ARBITRATION BETWEEN

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS,<br><br>UNION,<br><br>-AND-<br><br>PASCO SCHOOL DISTRICT,<br><br>EMPLOYER. | ARBITRATORS OPINION AND AWARD<br><br>CASE NO. 138994-P-24 |

BEFORE:        ROBIN A. ROMEO
               ARBITRATOR

FOR THE UNION:  THOMAS A. LEAHY
                REID, BALLEW & LEAHY LLP
                100 W. HARRISON ST. SUITE N-300
                SEATTLE, WA 98119
                (206) 285-6310
                tom@rmbllaw.com

FOR THE
EMPLOYER:
                LORRAINE W. WILSON
                F. CHASE BONWELL
                PORTER FOSTER RORICK
                601 UNION ST. SUITE 800
                SEATTLE, WA 98101

## INTRODUCTION

The International Union of Operating Engineers, Local 280 (Union) represents a bargaining unit of all full-time and regular part-time employees who are classified as custodial, maintenance, grounds, print shop, and print shop helper, employed by Pasco School District No.1 (Employer).  The Union and the Employer are parties to a collective bargaining agreement (CBA) effective September 1, 2001 through August 31, 2024.

On January 8, 2024, Victor Ochoa (Grievant) a mechanic employed by the Employer, filed a step one grievance alleging a violation of the CBA.  The grievance states "the Pasco School District did not have just cause to terminate my employment.  The Superintendent put me on a plan of improvement and did not give me a last chance how it states on the final evaluation document dated 1/8/24. Note my official orientation start date was 01/06/2023 and this shows that my twelve months were already up.  I dispute my evaluation given to me on this date.  Remedies sought reinstate job with all benefits.  Made whole in all ways."

The grievance was denied and progressed along the steps of the grievance procedure. The Union appealed to arbitration and the parties selected the undersigned arbitrator. On December 13, 2024 and January 8, 2025, arbitration hearings were held.

At the hearings, both parties were afforded a full and fair opportunity to present their case.  Nine witnesses were sworn and subject to direct examination, cross, redirect

and recross.  A total of 38 exhibits were received into evidence.  The representatives conducted themselves in a professional and cordial manner and advocated zealously on behalf of their clients.  Post-hearing briefs were submitted and exchanged on February 21, 2025.

ISSUE

The parties were able to stipulate to the following issue:

Did the Employer violate the collective bargaining agreement when it terminated Victor Ochoa?

If so, what is the appropriate remedy?

The parties were able to stipulate that the arbitrator retain jurisdiction over implementation of the award and that the issue is properly before the arbitrator.

RELEVANT CONTRACT PROVISIONS

**Section 4.1.**  Each new hire shall remain in a probationary status for a period of twelve (12) calendar months following the hiring date.  Such employee shall be evaluated for permanent status upon completion of six (6) nine (9), or twelve (12) months employment.  Employees may attain permanent status at any interval (6-9-12 months) upon satisfactory evaluation.  During this probationary period the District may discharge such employee without recourse for any unsatisfactory evaluation. At the sole discretion of the District, the District may move an employee off of probation into permanent status if the employee demonstrates exemplary performance. Employees in probationary status will be paid at the entry rate and will move to the regular rate at the beginning of the 7th month.

**Section 4.2.** At the end of the probationary period (Entry Rate), the employee will be subject to all rights and duties contained in this Agreement retroactive to his/her hire date.

**Section 9.1.** The District may take disciplinary action against an employee for just cause.

3 of 17

... A progressive disciplinary policy will normally be followed by the District when it deems it necessary to discipline an employee.

... The progressive disciplinary policy will consist of the following: (1) verbal warning(s), (2) written warning(s), (3) suspension and/or (4) termination.

## STATEMENT OF FACTS

In December 2022, the Grievant Victor Ochoa, a bus mechanic who had been employed by Sunnyside School District for eighteen years, applied for a job with Pasco School District.  On December 16, 2022, the Grievant received an email from Pasco School District stating "We are pleased that you are joining the team."  The email contained instructions for the onboarding process for the position and congratulated him and welcomed him to the Pasco School District.

On January 4, 2023, the Grievant attended new employee orientation at Pasco School District.  On January 5, 2023, the Grievant underwent drug testing pursuant to the Employer's request and on January 6, 2023, he was notified that he passed the test.

On January 9, 2023, the Grievant began working at the Pasco School District. The Grievant was paid on a monthly basis beginning January 1, 2023.

On May 8, 2023, the Grievant was given a two-week notice of termination of his probationary employment effective May 31, 2023.  The grounds for termination were:

1. He engaged in personal business during work hours, and

2. He began working for Pasco School District and gave notice of his resignation with Sunny Side School District on the same day he resigned.

These concerns caused the school district to rate the Grievant unsatisfactory under the following criteria:

1. Make good use of time;

2. Human relations skills;

3. Use good judgment; and

4. Represent the school district well.

The Grievant appealed the termination notice. On May 19, 2023, he met with the Superintendent to discuss his appeal. During this meeting the Superintendent counseled the Grievant not to make sexist remarks. He met with his supervisor Kelly Conkin and the Superintendent on May 30, 2023. The Superintendent sustained his appeal and reinstated his employment on the condition he be placed on a plan of improvement.

A second meeting was held with the Superintendent on July 20. At that meeting he was given a probationary performance improvement plan (PPIP). He was told that he would be evaluated monthly by his supervisor Kelly Conklin. His Union representative was present at the meeting.

On September 21, 2023, the Grievant was evaluated. He received satisfactory marks in all areas except for two areas where he received needs improvement: 1) take

5 of 17

proper care of equipment, and 2) make good use of time.  His supervisor noted "I have seen improvement over the last month." There were no unsatisfactory marks.

On October 16, 2023, the Grievant received an evaluation.   He received satisfactory marks in all areas except for three areas where he received needs improvement: 1) maintain accurate, appropriate and timely records, 2) make good use of time, and 3) use good judgment.  The evaluator's comments stated "Victor you are showing improvement in every area.  You have an eagerness to learn new skills and are adapting to the shop culture." There were no unsatisfactory marks.

On November 3, 2023, the Grievant received an evaluation.   He received satisfactory marks in all areas except for two where he received a need improvement rating including: 1) quality of work and 2) uses good judgment.   There were no unsatisfactory marks.   The supervisor commented "Victor you continue to show improvement with your relationships with your peers. As your skills increase I expect rework and troubleshooting will become more efficient."

On December 19, 2023, Grievant received an evaluation.   He received satisfactory marks in all areas except for three areas where he received a needs improvement rating for: 1) job knowledge, 2) staff skills, and 3) uses good judgment.  There were no unsatisfactory marks.   His supervisor commented "Victor you are starting to get more practice on small engine repairs which will make you proficient at

level one.  My concern is your criticism of your co-workers and your negative attitude towards change."

On January 8, 2024, Grievant received a memo from the Director of Employee Services stating "that due to unsatisfactory ratings in his evaluation he was being discharged effective that day." The Union filed a grievance which was processed through the steps of the grievance procedure.

POSITIONS OF THE PARTIES

EMPLOYER

The Employer believes the grievance should be denied because the termination is properly supported by the facts; the Grievant as a probationary employee was not entitled to just cause; and even if he was entitled to just cause, the Employer had just cause to terminate his employment on January 8, 2024 for unsatisfactory performance.

The employer argues it properly terminated the Grievant for failing to improve his performance under his probationary performance improvement plan ("PPIP").  The Employer argues his probationary period began on January 9, 2023, and ended on January 8, 2024, within his twelve month probationary period.  The Employer argues probationary employees who do not perform satisfactorily may be terminated for an unsatisfactory evaluation.

The Employer rejects any argument that the Grievant was hired prior to January 9, 2023. The District argues that even though he received a conditional offer of employment on December 16, 2022, he was not considered hired until he began work on January 9, 2023. The Employer argues that the requirement to appear at the school district and sign documents and undergo drug testing did not equate as the commencement of his employment. The Employer points out that the Union and the Grievant acknowledged that his probationary period would end on January 9,2024 when they met to implement the PPIP.

The Employer argues the fact that the Grievant received an email on December 16, 2022 outlining the onboarding process does not mean he was hired as of that date and notes that the email states: "...you cannot physically start working until you are given clearance to do so." The Employer argues the Grievant did not complete his drug test until January 6, 2023, and he was prohibited from beginning work before that point.

The Employer notes that Grievant has documented his first day of work as January 9, 2023. The Employer also argues that the Union has presented no evidence that an employee's date of hire is not the date they actually start performing work. The Employer argues the fact that the Grievant was paid for the entire month of January does not mean he was hired before January 9, it just means that his salary is annualized and he was paid on a monthly basis.

The Employer argues it had just cause to terminate the Grievant using the seven tests of just cause. The Employer argues that its' work rules were of requiring him to maintain proper professionalism, increasing his interpersonal skills, increasing his initiative and adaptability in his work and improving his time management and judgment were reasonable. The employer argues the Grievant was given adequate notice of the work rule and performance standards in that he reviewed and was shown the PPIP; and, the Employer met with him on a monthly basis to evaluate and discuss his performance. The Employer argues it conducted a sufficient investigation before making a decision to terminate his employment based on a monthly meeting between the Grievant and his supervisor. The Employer argues it conducted a fair investigation in that the Grievant had advanced notice of the criteria by which he needed to abide and was given five chances to meet and exceed those criteria. The Employer argues that the District had proof of misconduct in that the Grievant met monthly with his supervisor to discuss his performance. The Employer argues that the Grievant was dealt with equally without discrimination as there has been no allegation that he was treated any differently. The Employer argues that the discipline is appropriate under the circumstances in that the Grievant did not argue that a lesser form of discipline was appropriate.

The Employer argues that while the Grievant claimed that there was some attempt to retaliate against him due to union animus, no evidence was presented of such discrimination. The Employer argued that the discrimination complaint entered into evidence should be ignored by the Arbitrator. The Employer argues that the

Arbitrator should take notice of the result of the Independent Investigator who issued a report finding no discrimination based on union activity. The Employer argues that the Grievant offered no evidence that his supervisor was out to get him or was using the PPIP as a means to ensure he would be terminated. The employer argued that the Grievant was counseled on the need to refrain from making inappropriate comments about women and counseled on improving his job performance.

### UNION

The Union argues that the Grievant passed his probationary period before he was terminated. The Union argues that the probationary period starts on the date of hire and not the start date. The Union argues that the Grievant's date of hire was as early as December 16, 2022. The Union argues that his gross wages for January 2023 were the same as his wages for February 2023 through August 2023. The Union argues that the District treated the Grievant as a full-time employee not as a probationary employee because it paid him for the entire month. The Union argues that the Grievant attended and was paid for employee orientation on January 4, 2023 and took a drug test on January 5, 2023 and got the test results on January 6, 2023 which is the absolute latest his hire date could be. The Union argues reading Sections 4.1 and 4.2 together it is clear that the Grievant had moved out of his probationary period and therefore, the Employer could only terminate him for just cause which it did not do.

The Union argues the Employer cannot prove that it terminated the Grievant for just cause.   The Union argues the Employer never mentioned just cause in its termination letter and did not use just cause to terminate the Grievant and cannot now create reasons or recreate history or contrive additional reasons for terminating the Grievant.  The Union argues the incident described in the January 5, 2024 letter to justify his termination since he was not disciplined for that incident.

The Union argues that the Employer wrongfully stacked on reasons for the Grievant's discharge after the fact and violated just cause.  The Union argues the Grievant should have been given the benefit of progressive discipline.  The Union argues no one told the Grievant how he needed to improve or that he was close to termination.  The Union argued that all of these specific issues were only raised after his termination.

The Union argues that evaluations given to the Grievant were done by a supervisor with no mechanical experience and based on hearsay.  The Union argues that when he met with his supervisor she could not give him any specifics or instruction on how to improve his performance. The Union argues that the Grievant was surprised to learn he was being terminated and his evaluations do not justify termination.  The Union argues that the district was only interested in documenting his wrong doing instead of helping him improve and did not meet with him or evaluate him as many times as the PPIP called for.   The Union argues that the Employer was not truly interested in working with the Grievant, it was only interested in documenting his

eventual termination. The Union argues this violates principles of progressive discipline and just cause. The Union requests the termination be overturned and the Employer be ordered to return the Grievant and made whole in all ways.

## OPINION

The collective bargaining agreement states that a probationary employee may be terminated for unsatisfactory performance. "When incompetence is not based upon a specific instance of poor performance but relates to a continuous pattern of activity, arbitrators examine whether the employer was arbitrary, capricious, or discriminatory in determining whether the employee was incompetent. Performance appraisals can be criticized as subjective and are often challenged on procedural grounds, including a lack of fairness. Fairness factors include, but are not limited to: 1) clear notice of the standards that the employee must meet and the fact that failure to meet the employer's standards can lead to discipline, up to and including discharge; 2) adequate training and instructions about how to correct the employees job performance problems; 3) adequate supervision of and assistance to the employee; and, 4) adequate time and opportunity for the employee to improve."[1]

I do not find that the Grievant was terminated for unsatisfactory performance. It is therefore, unnecessary to decide whether or not he passed his probationary period and whether he should have been terminated for just cause. It is also unnecessary to

---

[1] *Discipline and Discharge in Arbitration.* (Norman Brand et al Eds.) BNA 2021, 4.III.b.

determine whether his date of hire was December 18 or January 1 or January 4 or January 8.

The manner in which the Grievant was evaluated and the evaluations themselves do not show that the Grievant was guilty of unsatisfactory performance. Further, while he was put on a performance improvement plan there is no evidence that anything was done to improve the areas of concern noted in the May letter of termination. The evaluations do not state that any areas of his performance were unsatisfactory. The Grievant's supervisor consistently praised the Grievant for his good work performance. Either his performance was satisfactory or he was being set up to fail by being told that his work performance was satisfactory.

The areas of concern noted in the notice of May notice of termination and subsequent performance improvement plan were:

1. Make good use of time;

2. Human relations skills;

3. Use good judgment; and

4. Represent the school district well

Tracking those areas of concern over the four evaluations he received on 9/21/2023, 10/16/2023, 11/32023 and 12/19/2023, which were the only methods of feedback he received and the ratings he received were:

1. Makes good use of time: Needs improvement, Needs improvement, Satisfactory, Satisfactory.

2.  Human Relations Skills: Satisfactory, Satisfactory, Satisfactory, Satisfactory

3.  Use good judgment: Satisfactory, Needs Improvement, Needs Improvement, Needs Improvement

4.  Represents the school district well: Satisfactory, Satisfactory, Satisfactory, Satisfactory.

In the area of makes good use of time, while he was initially rated needs improvement he was later rated satisfactory. In human relation skills, he was always rated satisfactory and in the area of represents the school district well, he was always rated satisfactory. In other words, the only area the Grievant was on notice to improve his performance was to "use good judgment"  and he was not rated unsatisfactory, only needs improvement. Thus, he was never found to be performing in an unsatisfactory manner during the period where he was supposed to be improving his performance.

The Employer relies heavily on the fact that the Grievant made sexist comments. I do not find sufficient evidence of sexual harassment or sexist comments rising to the level of unsatisfactory performance.

The specific comments raised by the Employer are the following: 1) a comment by the Grievant about his former supervisor having hot flashes during menopause, 2) a comment to the Superintendent about wanting to walk in her shoes but not her high heels, and 3) a comment to a co-worker about bringing a mattress to work because of the overtime.

The comments made by the Grievant are not proof of a violation of any sexual harassment policy or procedure. The comment about the former supervisor is hearsay alone.  The comment about the mattress is also hearsay.  It is generally accepted by most arbitrators that the employer cannot rely on hearsay evidence alone to prove misconduct.[2] For example, one arbitrator refused to uphold the discharge of an employee where the employee denied the allegation and the only evidence was a co-worker's statement in an interview with a private investigator.[3]  The comment about high heels may be awkward and ineffective, but is not the type of comment that could be taken as offensive and meant to intimidate the Superintendent of a school district by a bus mechanic.  At most, it may have been an insult to insinuate that as a bus mechanic he could someday rise to the level of the Superintendent.

There was no mention of these sexist comments in the performance improvement plan. There was no sexual harassment policy introduced by the Employer nor was there any proof that the Grievant had been given a policy or counseled or educated about sexual harassment or sexist behaviors. These comments cannot be considered as part of an unsatisfactory job performance.

Further, at the hearing, the Grievant denied making these comments or having any intent to make a sexist comment. I find him credible and given the hearsay nature of the comments, I question whether they were even made. I also find these allegations to be prejudicial.

---

[2] Id. 12.IV

[3] Id. 6.II.B.3

Further, it is also troubling that there is such divergence in the ratings in the Grievance's evaluations and such emphasis placed on hearsay prejudicial statements to justify his termination. His initial termination was based on the timing of his resignation notice to a former employer, which is a questionable offense in itself as it is unrelated to his employment at Pasco School District. Engaging in a phone call for 40 minutes alone may be grounds for misconduct but it is questionable whether it rises to the level of justifying termination. Given these circumstances together with the treatment he received in how he was evaluated and the feedback he was given, it certainly seems there were other motives for his termination. I cannot know what those motives are but I do not find that there are grounds for finding the Grievant guilty of unsatisfactory job performance justifying a probationary termination.

Remedy

The Grievant, Victor Ochoa, is to be reinstated to the position of Mechanic at Pasco School District. He will be considered to have passed his probationary period. His reinstatement will be effective immediately. He is to be reinstated and made whole including back pay and benefits he would have accrued as though he had not been terminated.

## AWARD

For the reasons set forth above, and incorporated herein,

1. The grievance is SUSTAINED.

2. The Employer violated the collective bargaining agreement when it terminated Victor Ochoa.

3. The remedy is to reinstate him with back pay and all benefits that would have accrued to him had he not been terminated.

4. The Arbitrator will retain jurisdiction to consider any dispute regarding the interpretation or implementation of this Award.

/s/

Robin A. Romeo

**Arbitrator**

Dated this 18 day of March 2025